IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Carlos McMicheal, | ) | Case No. 8:13-cv-00263-TMC-JDA |
| *also known as Carlos Al McMichael,* | ) | |
| SCDC ID No. 310820, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| John Pate, *Warden*; McKendley Newton, | ) | |
| *A/warden*; Aurther Jordan, *A/warden*; Walter | ) | |
| Worrock; Joseph Deloach, *Capt*; Thomas E. | ) | |
| Byrne, MD; A. Jamison, *Officer*; Officer | ) | |
| Chaney; G. Donaldson; Investigator Orr; | ) | |
| Jermaine Donaldson; John Does; sued in their | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion to dismiss by Defendants John Pate ("Pate"); McKendley Newton ("Newton"); Aurther Jordan ("Jordan"); Walter Worrock ("Worrock"); Joseph Deloach ("Deloach"); Thomas E. Byrne, MD ("Byrne"); A. Jamison ("Jamison"); Officer Chaney ("Chaney"); G. Donaldson ("G. Donaldson"); Investigator Orr ("Orr"); and John Does (collectively, "Defendants").[1] [Doc. 31.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

---

[1]By Order entered May 2, 2013, this Court dismissed Defendant Jermaine Donaldson without prejudice and without issuance of service of process. [Doc. 27.]

Plaintiff, proceeding pro se, filed this action alleging a violation of his constitutional rights pursuant to 42 U.S.C. § 1983 on January 24, 2013.[2] [Doc. 1.] Defendants filed their motion to dismiss on June 6, 2013. [Doc. 31.] By Order filed the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 32.] Plaintiff filed a response in opposition to the motion on July 11, 2013. [Doc. 35.] On July 12, 2013, Plaintiff requested additional time to respond to the motion to dismiss [Doc. 37], and this Court granted the motion for extension of time, giving Plaintiff until July 29, 2013 to file an additional response [Doc. 43]. Plaintiff failed to file any additional response to the motion to dismiss. Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff's lawsuit concerns an incident at Allendale Correctional Institution ("Allendale"), a part of the South Carolina Department of Corrections ("SCDC"), where Plaintiff was incarcerated at the time of the alleged events giving rise to this action.[3] Plaintiff alleges Pate, Newton, Jordan, Worrock, Deloach, Byrne, Jamison, Chaney, G. Donaldson, and Orr are staff members at Allendale [Doc. 1 at 2] and John Does are employed at SCDC's Headquarters in Columbia, South Carolina [Doc. 16]. Plaintiff generally alleges that Defendants were deliberately indifferent to a serious risk of harm to

---

[2]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on January 24, 2013. [Doc. 1-2 (envelope stamped received by prison authorities on January 24, 2013).]

[3]Plaintiff was released from custody during the pendency of this action. [Doc. 62 (notice of change of address).]

Plaintiff by failing to protect him from being assaulted and physically injured by Jermaine Donaldson ("J. Donaldson"), a fellow inmate, on January 21, 2012, and by failing to promptly obtain adequate medical assistance for Plaintiff after the assault. [Doc. 1 at 3–5; Doc. 1-1 at 1, 4, 5, 6, 7, 8, 9.]

Specifically, Plaintiff alleges he was attacked by a mentally ill inmate, J. Donaldson, on January 21, 2012, and part of Plaintiff's little finger was bitten off by J. Donaldson. [Doc. 1 at 3.] Plaintiff alleges that, prior to the attack, on August 31, 2011 and thereafter, he informed Defendants of threats made on Plaintiff's life by unknown inmates, but Defendants dismissed the threats and took no action to protect Plaintiff. [*Id.*; Doc. 1-1 at 6, 7, 8, 9.][4] He alleges that unknown inmates wrote letter(s) making threats on Plaintiff's life, and Plaintiff gave the letter(s) to Chaney, Jamison, Deloach, G. Donaldson, Worrock, Byrne, Pate, and Orr and/or told them about the letters such that they had actual knowledge of the threat. [Doc. 1 at 3 ¶¶ 2, 4; Doc. 1-1 at 6, 8.] One letter, which Plaintiff notified Defendants about, stated the inmate would pay a staff person or inmate to poison Plaintiff's food. [Doc. 1-1 at 6.] Plaintiff alleges he received another message or threatening letter after the "8/23/11 letter," and he notified Defendants about it also. [Doc. 1-1 at 7.] He further alleges Defendants were aware of the risk of harm he faced before the assault happened due to a prison investigation. [Doc. 1 at 3 ¶ 4.] Plaintiff also alleges

---

[4] Plaintiff attached several documents or exhibits to the Complaint that contain factual allegations related to the matters raised in the Complaint. [Doc. 1-1 at 1-9.] Fed. R. Civ. P. 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." For a Rule 12(b)(6) motion to dismiss, the Court may accept the well-pled facts in the Complaint as true and documents attached to the Complaint as exhibits as long as they are integral to the Complaint and authentic. *See Field v. Berman*, 526 F. App'x 287 (4th Cir. 2013); *Occupy Columbia v. Haley*, - F.3d -, No. 13-1258, 2013 WL 6570949, at *5 (4th Cir. Dec. 16, 2013); *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). This Court has taken as true all facts set forth in the exhibits to the Complaint.

his parents called SCDC headquarters, spoke with John Doe to notify him or her that violence was coming against Plaintiff in the future, and John Doe sent a computerized text message to the Allendale prison officials to notify them about the threat.  [Doc. 16.] Further, he alleges that on January 21, 2012, Chaney left his post for ten to fifteen minutes, which enabled the inmate to attack Plaintiff.  [Doc. 1-1 at 9.]  Plaintiff also alleges that Defendants' placement of seriously mentally ill inmates in the general prison population posed a substantial risk of harm to Plaintiff who is not mentally ill.  [Doc. 1 at 3.]

Plaintiff alleges that, after he was attacked and part of his finger was bitten off, Defendants unreasonably delayed his medical treatment by waiting more than two hours to transport Plaintiff to a hospital while Plaintiff was bleeding excessively.  [Doc. 1 at 4; Doc. 1-1 at 1, 4, 5.]  Specifically, Plaintiff alleges that Jamison, the Emergency Medical Transportation runner, was the person on call and she caused the two-hour delay by being too slow and failing to notify other officers to permit someone else to transport Plaintiff. [Doc. 1 at 3 ¶ 5; Doc. 1-1 at 1.]  He alleges that because Jamison was on emergency call she should have treated his situation as an emergency and should not have taken 1 ½ or 2 hours to arrive at the medical emergency.  [Doc. 1-1 at 1.]  Plaintiff alleges that Byrnes knew Plaintiff's finger had been bitten off, had authority to override Deloach's decision to wait on Jamison for transport, but he failed to order faster access to transport to a hospital. [Doc. 1 at 4 ¶ 6; Doc. 1-1 at 5.]  Further, he alleges Deloach decided Plaintiff should wait to be transported to Columbia by Jamison, even though Officer Ford had requested to transport Plaintiff quicker.  [Doc. 1-1 at 4.]  He alleges that if Deloach had permitted Officer Ford to transport Plaintiff quicker to a hospital his finger may have been saved.  [*Id.*; Doc. 1-1 at 1.]

4

Based on these facts, Plaintiff sues Defendants in their individual and official capacities and claims that they violated his Eighth Amendment rights. [Doc. 1 at 2–5.]. Plaintiff seeks $250,000 in compensatory damages and $150,000 in punitive damages. [*Id.* at 5.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Requirements for a Cause of Action Under § 1983

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting

5

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State

6

has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Rule 12(b)(6) Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and

authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

## **DISCUSSION**

Defendants have moved to dismiss this action on several grounds.  They contend: (1) Plaintiff failed to exhaust his administrative remedies prior to filing this action such that his claims are barred under the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff failed to serve John Does within the appropriate time period; (3) Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment; and (4) Plaintiff fails to set forth facts sufficient to state a cause of action upon which relief may be granted with respect to the failure to protect and deliberate indifference to medical needs claims.  [Doc. 31-1 at 6–7.]

**Exhaustion of Administrative Remedies**

Defendants first argue this case should be dismissed because although Plaintiff filed a Step 2 Appeal, it had not been processed before Plaintiff filed this action; thus, Defendants contend Plaintiff has not exhausted his administrative remedies as required before filing suit.[5]  [Doc. 31-1 at 5.]  The Court disagrees.

Section 1997e(a) of the PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  As the United States Supreme Court observed:

---

[5] As noted, on January 15, 2014, Plaintiff notified this Court that he has been released from prison and provided his new address.  [Doc. 48.]  A plaintiff's status of whether he is a prisoner at the time he filed the lawsuit is determinative as to whether the § 1997e(a) exhaustion requirement applies.  *See Cofield v. Bowser*, 247 F. App'x 413 (4th Cir. 2007).  Thus, Plaintiff is required to have exhausted prior to filing this lawsuit.

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process); *but see, Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when

10

presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005). Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson*, 407 F.3d at 681.

### *SCDC Grievance Procedures*

The Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA–01.12. In *Jones v. Kay*, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007), the court summarized the parameters of this policy as follows:

(1)     an inmate must fill out a Form 10–5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;

(2)     the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;

(3)     the Warden should respond to the grievant in writing within forty (40) days;

(4)     the inmate may appeal by completing a Form 10–5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and

> (5)    a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.

*See* SCDC Policy GA–01.12 (Inmate Grievance System).  The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter.  *Id.*

### Plaintiff's Attempt to Exhaust

Defendants submitted a copy of Plaintiff's Step 2 Appeal in Grievance No. ACI 0122-12, received by the SCDC office on February 13, 2012; the bottom portion of the form, where the responsible official is to place the decision, is blank.  [Doc. 31-2 at 1.] Thus, they argue that because the Step 2 Appeal is pending, Plaintiff failed to complete exhaustion of the administrative process.  Plaintiff contends that he did everything he could do to attempt to exhaust the SCDC prison grievance process related to his claims set forth in the Complaint.  [Doc. 1 at 2.]  He attached a copy of his Step 1 Grievance form to the Complaint.[6]  [Doc. 1-1 at 1].  The Warden denied the Step 1 Grievance ACI-0122-12 [*id.*], and Plaintiff completed a Step 2 Appeal on February 9, 2012, which the SCDC office received on February 13, 2012 [Doc. 31-2 at 1].  Plaintiff further contends that SCDC policy states a responsible official will respond within 90 days and, if an extension is granted, may exceed 215 days.  [Doc. 35 at 3.]  Plaintiff asserts that no extension was granted with respect to his grievance.  [*Id.*]  At the time Plaintiff filed this suit, over eleven months after he submitted his Step 2 Appeal, Plaintiff had not received a response to the Step 2 Appeal.

---

[6]Plaintiff also included copies of other Step 1 Grievance forms, two of which were marked as unprocessed, stating they would be addressed in the response to Grievance ACI-0122-12.  [Doc. 1-1 at 4, 5.]

As the Seventh Circuit has observed, "[W]e refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (quoting *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)) (alteration in *Lewis*).  Several circuits have held a grievance may be considered exhausted under the PLRA when a prisoner files a grievance but has not received a timely determination.  *See  Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable . . . ."); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) ( "[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

Here, as stated above, Plaintiff had not received a response to his Step 2 Appeal over eleven months after he filed it. Additionally, after waiting over nine months for a response, on November 26, 2012, Plaintiff submitted a Request to Staff Member to inquire about why he had not received a response to his Step 2 Appeal in Grievance ACI-0122-12. [Doc. 1-1 at 3.]  He received a response on December 3, 2012, stating, "Due to a shortage of staff there has been a delay in responses to grievances.  You will get a response once

13

your grievance is processed." [*Id.*] Defendants have not asserted that an extension was granted with respect to Plaintiff's grievance or that some other exception applies. At this stage of the litigation, the Court has taken judicial notice of the SCDC grievance process, which states a responsible SCDC official will have sixty days to respond to the Step 2 Grievance plus five days for the grievant to be heard, and Plaintiff alleges the policy states a responsible official will respond within ninety days.[7] Under either of these scenarios, Plaintiff's grievance was not timely processed; accordingly, the Court recommends that Defendants' motion to dismiss based on Plaintiff's failure to exhaust prison administrative remedies be denied.

**Service on John Does**

Defendants contend that pursuant to Federal Rule of Civil Procedure 4(m), the Defendant "John Does" should be dismissed because more than 120 days after the filing of the summons and Complaint has passed and the time for service of process has expired without John Does being served. [Doc. 31-1 at 5–6.] Plaintiff argues that John Doe[8] should not be dismissed because Plaintiff did comply with the undersigned's order to bring the action into proper form as to that Defendant by submitting a proposed summons and Complaint, and he alleges he did inform the Court precisely who John Doe is—the person employed at SCDC headquarters who received the telephone call from Plaintiff's parents to warn of the harm that was to come to Plaintiff and passed on the message to Allendale

---

[7]Defendants have failed to file a reply, and neither party has provided the Court with evidence regarding deadlines under the prison grievance policy.

[8] Although the Complaint names "John Does" indicating more than one individual, from Plaintiff's description of John Doe it appears Plaintiff refers to only one individual. [Doc. 16; Doc. 35 at 4.]

14

prison officials, and who failed to follow SCDC's policy and procedure to protect his safety. [Doc. 35 at 4; Doc. 16.]

This Court notes that on July 15, 2013, the summons for John Doe was returned by the U.S. Marshal as unexecuted because "SCDC couldn't accept . . . After reviewing the summons & complaint the identity of John Doe is unable to be determined.  Need Further identifiers." [Doc. 41.]  It appears that Plaintiff has not been directed to submit new proposed service documents to better identify John Doe.  Because, as discussed herein, the Court recommends that Defendants' motion to dismiss be denied as to Defendants in their individual capacities, the Court recommends that Plaintiff be given additional time to attempt service of process on John Doe if this action is not dismissed.  If the district judge adopts this recommendation and the case goes forward, it is further recommended that Defendants be directed to use reasonable efforts to identify John Doe for service.

**Eleventh Amendment Immunity**

Defendants move to dismiss the claims against them in their official capacities based on Eleventh Amendment immunity.  The Court agrees.

The Eleventh Amendment prohibits federal courts from entertaining an action against a state.  *See, e.g.,  Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11(1890).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit

against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, Plaintiff's claims against Defendants in their official capacities must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

**Deliberate Indifference/Failure to Protect Claim**

Defendants move to dismiss the Complaint because Plaintiff fails to set forth facts sufficient to state a cause of action upon which relief may be granted as to the deliberate indifference failure to protect claim. Specifically, they contend that Plaintiff fails to set forth facts sufficient to allege that they "were aware (or should have been aware)" of the risk of serious harm to Plaintiff at the hands of another inmate because Plaintiff did not make Defendants aware of a particular threat posed by the specific inmate involved in the altercation, Jermaine Donaldson. [Doc. 31-1 at 7–8.] Defendants argue that Plaintiff's act of giving to prison officials an anonymous letter(s) that contained threats to Plaintiff's safety is not sufficient to meet the pleading requirements for deliberate indifference. [*Id.*] The Court disagrees.

The Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate

16

indifference.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner,* 927 F.2d 1312, 1315–17 (4th Cir. 1991).  Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation.  *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*).  A plaintiff must allege facts to show he was exposed to a substantial risk of serious harm in that if nothing was done he was almost certain to face serious injury at the hands of other inmates.  *See Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (noting that the Eight Amendment protects against risk of future harm that is "'*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers" (citation omitted) (emphasis in original)).

At the Rule 12(b)(6) stage, Plaintiff is not required to plead facts sufficient to prove his case; instead, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  Here, Plaintiff sets forth facts sufficient to state a claim to relief that is plausible on its face.  First, Plaintiff contends that, before the attack, he gave prison officials a letter from another inmate threatening Plaintiff's safety.[9]  Additionally, Plaintiff alleges his parents called SCDC

---

[9]It is unclear whether Plaintiff gave Defendants only one letter or more than one letter in which Plaintiff was threatened.  [*See* Doc. 1-1 at 6–7 (Request to Staff Member and Step 1 Grievance indicating Plaintiff turned in more than one note/letter to prison officials); Doc. 31-1 at 8 (Defendants' memorandum in support of motion to dismiss, indicating Defendants are unclear whether one or more letters were turned in).]  Additionally, the letter(s) are not included in the record before the Court; accordingly, the Court cannot

headquarters, spoke with John Doe to notify him or her that Plaintiff had been threatened, and John Doe sent a computerized text message to the Allendale prison officials to notify them about the threat.  [Doc. 16.]  Plaintiff further alleges Defendants were aware of the threat because of a prison investigation.  [Doc. 1 at 3.]  Finally, Plaintiff notified prison officials that he was concerned about his future safety at Allendale.  [Doc. 1-1 at 6.] Accordingly, the Court recommends that Defendants' motion to dismiss be denied with respect to the failure to protect claim.[10]

**Deliberate Indifference to Medical Needs Claim**

Defendants move to dismiss the Complaint because Plaintiff fails to set forth facts sufficient to state a claim upon which relief may be granted related to deliberate indifference to a serious medical need.  Defendants contend this claim is brought only against Byrne.[11]  [Doc. 31-1 at 8–9.] While they admit, without waiving other defenses, that Plaintiff may have pled a sufficient claim for deliberate indifference to his serious medical

---

determine to what degree those letters may have put prison officials on notice of an imminent threat.

[10]Defendants rely on *Fuller v. Cnty. of Charleston*, 444 F. Supp. 2d 494 (D.S.C. 2006), which held that "[a]bsent some evidence that prison officials were subjectively aware that this inmate was likely to attack Plaintiff, the mere fact that the attacking inmate was classified as potentially violent cannot constitute deliberate indifference." *Id.* at 498.  Notably, the Court decided Fuller at the summary judgment stage and not on a motion to dismiss, and it further found that deliberate indifference was not established because there were no records or testimonial evidence that "ill will" existed between Plaintiff and his assailant prior to the attack.  *Id.*

[11]Although Defendants allege Plaintiff has named only a single medical provider, Defendants include a footnote in their memorandum in support of motion to dismiss that they acknowledge Plaintiff may have pled a claim against Jamison for deliberate indifference to Plaintiff's serious medical need.  [Doc. 31-1 at 9 n.2.] Accordingly, it is somewhat unclear whether Defendants concede Plaintiff brings his medical indifference claim against Jamison. Additionally, Plaintiff contends that he brings this claim against Jordan, Deloach, Byrne, and Jamison.  [Doc. 35 at 6.]  Defendants failed to file a reply brief.  The Court need not determine at this stage who Plaintiff brings this claim against or whether Defendants seek to dismiss this claim against one or more defendants because, as discussed below, the Court recommends that Defendants' motion to dismiss be denied with respect to Plaintiff's deliberate indifference to medical needs claim.  Accordingly, the parties may clarify their positions at a later point in this litigation.

need against Jamison, they contend Plaintiff did not plead sufficient facts against Byrne. [*Id.*] Defendants argue that Plaintiff failed to allege that actual medical treatment provided was improper or that Byrne was responsible for the alleged delay in treatment. [*Id.*] The Court disagrees.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851. Moreover, the Fourth Circuit has held that deliberate indifference based on serious medical needs of prisoners can be shown by prison doctors in their response to a prisoner's needs or by prison guards in intentionally delaying access to medical care. *See Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir. 2009) (finding that, taking the plaintiff's allegations as true, he alleged sufficient

facts to constitute intentional denial of treatment because delay can be a violation of the Eighth Amendment); *Abraham v. McDonald*, 493 F. App'x 465 (4th Cir. 2012) (a delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain).

Taking Plaintiff's allegations as true and in the light most favorable to him, as the Court must for Rule 12(b)(6) motion, Plaintiff sets forth facts sufficient to state a claim to relief that is plausible on its face.  He alleges that, after he was attacked and part of his finger was bitten off, Defendants unreasonably delayed his medical treatment by waiting more than two hours to transport Plaintiff to a hospital, while Plaintiff was bleeding excessively.  [Doc. 1 at 4; Doc. 1-1 at 1, 4, 5.]  Plaintiff alleges Jamison, the Emergency Medical Transportation runner, was on call and caused the two-hour delay by being too slow and failing to notify other officers to permit someone else to transport Plaintiff.  [Doc. 1 at 3 ¶ 5; Doc. 1-1 at 1.]  He alleges that because Jamison was on emergency call, she should have treated his situation as an emergency and should not have taken 1 ½ or 2 hours to get to the medical emergency.  [Doc. 1-1 at 1.]  Plaintiff further alleges that Deloach was the one who decided who would transport Plaintiff and that another officer asked if she could take Plaintiff, which would have been timely, but Deloach decided to wait on Jamison.  [Doc. 1-1 at 4.]  Finally, Plaintiff contends that Byrnes knew Plaintiff's finger had been bitten off, had authority to override Deloach's decision to wait on Jamison for transport, but failed to order faster access to transport to a hospital. [Doc. 1 at 4 ¶ 6; Doc. 1-1 at 5.]  These allegations are sufficient to state a claim that these Defendants delayed Plaintiff's medical care.  Accordingly, the Court recommends that Defendants'

motion to dismiss be denied with respect to Plaintiff's deliberate indifference to medical needs claim.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART. The Court recommends the motion be granted as to Plaintiff's claims against Defendants in their official capacities but otherwise be denied.[12]

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 21, 2014
Greenville, South Carolina

---

[12]If the district judge adopts this recommendation and the case goes forward, it is further recommended that Defendants be directed to use reasonable efforts to identify John Doe for service.